This case is Green Tree Community Health Foundation against AdmiralInsurance. Mr. Armstrong, whenever you're ready. Good morning, Your Honors. Arthur Armstrong. May it please the Court, my name is Arthur Armstrong from Flaster Greenberg. I'm here on behalf of the appellant plaintiff, Green Tree Community Health Foundation, and I'd like to reserve three minutes for rebuttal. Thank you. The parties in this case have disputes about various issues, but I think I'd like to start with something that the parties agree upon. And the parties agree that the plain language of an insurance policy must be enforced according to its terms. As the Court has held, a court will not rewrite an insurance policy or construe clear and unambiguous language to mean other than what it says. Here, the district court's decision runs afoul of that fundamental tenet by not giving effect to the term claim as it is defined in the insurance policy. In its analysis, the opinion states, quote, a claim is defined as a lawsuit or written demand that is connected to a loss event. That is wrong. Under the definition of claim in the policy, the lawsuit or written demand must be made against an insured. In fact, in the definition of claim, the defined term insured appears four times in bold. There's also no dispute in this case that Green Tree is the only insured under the policy. This element of the policy, and particularly the definition of claim, is critical to the issue in this case because Admiral, the insurance company, denied Green Tree's claim based on a prior acts exclusion. That prior acts exclusion only applies to previously made and reported claims. It states, any claim, it's an exclusion in the policy and it purports to bar, quote, any claim that was reported to the company or any other insurer prior to the effective date of this policy. Okay. So the claim, I think your argument boils down to, there could not have been a claim, the prior claim, to the extent that a claim existed in, not as defined in this agreement, but, you know, a general, the general term, lower claim. Falsy claim, maybe. Exactly. There was some claim out there, but it was not made against Green Tree. In fact, it was made at a time when Green Tree didn't exist. Therefore, it could not be a claim as understood by this agreement. Is that right? That's exactly right, Your Honor. And I think that the district court said that that interpretation of this contract would make the contract or certain parts of it illusory. What's your understanding of what the court meant by that? Certainly, Your Honor. I'm glad you bring that up because in our view, Judge Savage's opinion did not say it would render the policy illusory. That is the appellee's contention in their briefing. That language actually appears with respect to another issue that was disputed in the underlying motion for summary judgment. And one of the areas of dispute was whether or not demands for indemnification were covered, were claims under the policy. Because the way this case came about initially was before Green Tree was ever sued in the litigation, they received demands for indemnity from certain other parties. They submitted those demands for indemnity. Other parties and other cases. Your Honor, in an underlying malpractice case, various entities that had purchased Chestnut Hill Hospital were sued. That's who my client had agreements to indemnify. Right. So they received demands from those parties to indemnify them. Other cases or this Anderson case? It was in the 2019 case that was filed. In the 2019 Anderson case. Yes, Your Honor. Yes, Your Honor. And so, Judge Freeman, as we read Judge Savage's opinion, he is addressing there the question of whether demands for indemnity would be claims. And the judge's point, as we understood it, was of course they would be because otherwise the policy would be illusory. Because it would provide no coverage. Because our client, Green Tree, never employed medical professionals. So they could never be sued. They don't have doctors, nurses. There would be no obligation in connection with indemnification. But doesn't that same argument apply to the word insured? I'm sorry, Judge, which? Doesn't that same argument that you're trying to make apply to the construction of who the It does not, Your Honor, because the policy provides coverage, undoubtedly. And the case law related to whether something is illusory, a court finds a policy to be illusory that provides no coverage. Here, we're arguing it affords coverage. Because your client, Green Tree, isn't insured for purposes of those claims from 1984 to 2005, right? Correct, Your Honor. That's the retrospective. But the argument you're making now, that the loss exclusion doesn't apply to you, you want to argue that this wasn't a claim, the 2002 case wasn't a claim made against you because you weren't insured. Your Honor, it's a little more than that. It's more than that, certainly. And where we start, of course, is the policy language. And the language of the exclusion, which as the court knows, aside from enforcing the express terms, exclusions are construed narrowly. Certainly, they're defined on their express terms. What kind of claim would have to be asserted and against whom in order for the prior act's exclusion to apply? Sure, Your Honor, fair question. In this case, any claim prior to the inception of the policy. So the policy inception date was 2011. Right. Green Tree assumed these indemnity obligations in 2008. So if anything had come in between 2008 and 2011, that arguably would, that's my conception of what a prior act's exclusion would be intended to apply. Let's remember, this is boilerplate. This is an exclusion that's included in many policies. It's not particular to this situation or my client. In fact, if you look at the language of the prior act's exclusion, it says any claim that was reported to the company, the company being Admiral or any other insurer. Well, certainly, Admiral knows no prior claims were submitted to it. So we find it to be really misleading, the argument that somehow, if we ask to, ask the company and employ them here, that somehow it makes the provision illusory. I guess I'm having a hard time understanding what your argument's focusing on. I understand your written brief, but you lose me a little bit in your argument. Sure, if I may try to recast it, I'd be happy to. We've got this 2002 claim. Yes, sir. That was made for the Anderson claim, made in 2002. And it was sent to an insurance company. An insurance company provided defense. In 2002 and 2004, it was dismissed for lack of prosecution. Yes, sir. But an insurance company had that case. All right. So it seems to me here that the key to this question is what a loss event is. Your Honor, very much so, in the sense that what you're describing, a dynamic that would exclude any prior loss event, there would be nothing wrong with that, if that's how they wrote the policy. You know, in the loss event, if it wasn't for the fact that the definition of loss event, I could see the claim that you're making against Admiral is really an indemnification claim that's different than the 2002 Anderson claim, okay? But the problem I have is when I look at the definition of loss event, the policy that they sold you and the policy that you purchased had this pretty broad exclusion that said that with respect to coverage under coverage A, and that's what coverage you have, is coverage A, a medical incident, a loss event means a medical incident to which this insurance applies. So it seems to me that, you know, you've got coverage for any other claim that comes in from 85 to 2005, but if there's this narrow group of claims that got referred to another insurance company that dealt with a loss event that was a medical incident, that exclusion covers. Your Honor, the key point here is, I'm tracking everything you're saying, but the key point here is that's not what they wrote in the policy. What did they write? They wrote it has to be that it's a prior claim, a claim previously made. Now, it could have said a prior lawsuit. Why isn't it a prior claim? Because the definition of claim in the policy expressly requires the lawsuit or demand to be against the insured, and the only insured is Greentree. And if the loss event has to be an event to which this insurance applies, then would that begin in 2008 when, or sorry, in 2011 when you obtained the insurance? The loss event term, thinking about what it applies to, that would come to the coverage grant, which makes reference to medical malpractice claims. So it can't be a warehouse burning down or something like that. You don't want that definition. Okay. So remind me of the timeline, though. You agreed to indemnify in 2008, and you obtained the policy when? 2011. In 2011. Okay. Yes. Yes. And the policy period. Yeah, you don't want to limit yourself to that window, 2008 to 2011. You bought this policy and paid a substantial sum for it for coverage back from 84 to 2005. There could be a lot of cases that pop up at that time. Absolutely, Your Honor. So the policy period is October 1st of 2011 to indefinite. Right. And the retroactive date is, meaning when these things could have occurred, is March 1st, 1984 to March 1st, 2005. Yeah. But I guess it gets me back to my original question. It seems like you're trying to argue who the insured is and have it both ways. No, Your Honor. So the insured is undisputed. It's Greentree. It's listed in the policy. Then how can you say this is not a claim against the insured? Because Greentree was not sued in 2002. So the prior, this is a claim. 2019 is a claim. The prior action was not. And the key point is that the insurance company drafted the exclusion. They could have excluded previously reported lawsuits against anyone. I'm sorry. So you're saying the definition of insured under the exclusion is different than the definition of insured under claim? No, Your Honor. It's all the same. The only insured is Greentree in the policy. And how can you be an insured one time and not an insured the other time? Well, the prior action in 2002 was against another party. They were not an insured. So that's why it's not a claim. So the only insured is Greentree. Didn't Greentree assume the indemnification obligations that were created in the sale agreement so that the claim against the hospital was a claim against Greentree? Your Honor, the answer is yes, they did assume those obligations. But in no way is assumption of an indemnity obligation by contract the same as becoming stepping into the shoes of that party. Just as the insurer here, Admiral, has agreed to defend and indemnify Greentree under the insurance policy. It's a contractual obligation. It doesn't make them our successor or create any type of corporate, you know, continuity relationship. I see my time is up here. I'm happy to continue entertaining questions. Well, your brief says that that indemnification provision in the sale agreement was only meant to assign to Greentree liability for certain kinds of claims. What are those certain kinds of claims and why don't they include this one? They were excluded liabilities. And we're not saying it doesn't include this one. In fact, that's why we, these are exactly the type of claims that were intended to be covered by this policy. So, as we can see from the chronology after Greentree assumed these indemnity obligations to hospital purchasers. Now, those are the successors to the hospital. Once they assumed those, or they created those indemnity obligations, they sought to get a policy that would cover them. And in case somebody called upon those someday. And that's exactly what happened here. Out of the blue, they get a demand for indemnity. Oh, boy. And then they're getting sued. They make their claim and are seeking coverage. And I see, Judge Fisher, you're smiling. I see you're soaking up. Sure. You know, when I look here at the prior acts that are excluded, which is on page 259 of the appendix, it says any claim that was reported to any other insurer prior to the inception date of the agreement period set forth above. Nowhere in that sentence does it even use the word insured. So, the way it comes in is via the definition of claim. Because claim is a defined term of the policy. That's why I get back to my question. It seems like you want to have insured to be defined two different ways. You want it to include Greentree when you need it, but you want to exclude Greentree when it applies to the excluded. Your Honor, respectfully, we don't see it that way. Greentree is always the insured. I know you don't see it that way, but that's my assessment. Greentree is always the insured. Claim means what it says here. And what the lower court did is allow an insurance company to excise a defined term from a critical exclusion. And that is determinative of whether it's covered or it's uncovered. Allowing that to stand would be a sea change under Pennsylvania law. The expressed terms of a policy cannot be varied at the whim of an insurer after the fact to take something from within coverage to without. And it's just, I cannot underscore enough how contrary to the Pennsylvania precedent would be to allow that type of interpretation. Can you just give us an example of what would be excluded under Paragraph 3 of the Prior Acts Exclusion? Sure. If, let's say, so the policy was purchased in 2011. Let's say in 2010, Greentree received a demand from indemnity. Exact same facts. Let's just say all those same facts happened that we're dealing with today, but it happened before the inception of the policy, it would be excluded. Okay. So it was the same injury in the Anderson situation. Correct. And it was filed in 2010 against Greentree. Correct. And it was reported to another insurer. Well, yes. And because the key here is, was it asserted against Greentree? And Badwin was free to craft an exclusion that did not limit it in that way. It would be underwritten differently. There might be a different premium. Certainly it would afford different coverage. If any claim that was previously asserted against the hospital was excluded, that would be a different exclusion. We wouldn't be here having the same argument. Doesn't the policy explicitly apply to claims arising from events between 84 and 05? Yes. That's the period in which claims, the events underlying those claims, is covered. That's the idea. The retrospective date. So the inception date of the policy, meaning when they bought it, when they can start making claims, is 2011. But that period of time, so if let's say something, they get sued for something that happened in 2006, it wouldn't be covered under this policy either. That period of 1984 to 2005, that's the period of time where you're looking at the malpractice. When did that malpractice happen? Okay. Thank you. Thank you very much. May it please the Court. Steve Canary on behalf of the Respondent, Admiral Insurance Company. I want to start off in terms of describing what this policy is and what it's not, because I think it's really important to provide a context which I think the District Court was spot on when it went through the policy and examined the policy as a whole. It didn't just slice and dice certain terms or conditions. It really went through the insuring agreement and exclusion and also tried to figure out what was Green Tree exactly buying here. Why was it assuming these liabilities, et cetera? So the Admiral policy was essentially an occurred but not reported coverage agreement. And that's a fancy way of saying it provided claims made and reported coverage as long as the claim is first made and reported during the agreement period. However, those liabilities that are covered are long-tail liabilities specific to the hospital itself from the specified period of March 1, 1984, to March 1, 2005. The latter date being essentially the sales transaction date when the hospital and the other health care facilities were sold. Now, how'd Admiral simply wish to purchase, not purchase, but issue a claims made and reported policy without those restrictions regarding the incurred liabilities as to when and where and what time period? It would have just issued the governing policy attached to it. That's a state-of-the-art claims made reported insuring agreement. But that's not what happened here. That coverage was significantly modified by the incurred but not reported coverage agreement, and that's within the first few pages of the policy. Now, Greentree is arguing that, well, you know, there was no prior claim because the lawsuit wasn't filed against Greentree. Well, from Admiral's perspective, they're trying to have it both ways, and I think, Judge Fischer, you sort of raised that a little bit here. Because when you get to it, you would need exclusionary language in the first place when you think about it, because if there was a prior lawsuit filed by or against Greentree, the insuring agreement requires that the claim must be first made and reported within the agreement period. So in this case, if the prior lawsuit, let's say the Anderson action was indeed filed against Greentree, it wouldn't even make it past the insuring agreement. We wouldn't even need exclusion. We wouldn't even be here today, perhaps. All right? So, you know, the exclusionary language is there for a reason, and it's not superfluous language, right? All terms and conditions need to be applied here. Can I just give an example of a different way in which it would not be superfluous language, and that was if the claim involving the Anderson situation were made against Greentree in 2010. Okay. So you bring up an interesting question, Judge Freeman, because that begs another issue here, which is when could exclusion ever apply? And what we mean by that is Greentree certainly did not exist, right, when the hospital was operating prior to 2005. They weren't associated with the hospital. They weren't running it. Certainly no claims were being filed against it. They were not reporting it to an insurance company at the time. They didn't assume those liabilities until 2005, and we respectfully submit that the court's decree, when the sale was approved in 2005, did transfer both charitable assets and excluded liabilities. So from 2005, Greentree did assume those liabilities. In 2008, where they did assume it, in addition to those other excluded liabilities were the contractual identification claims by the original hospital purchasers. But here's a key point. As your friend is saying, they didn't assume the liabilities. They assumed the responsibility to indemnify them. Well, Judge, we respectfully disagree, because what they did assume was both not only charitable assets, but the excluded liabilities, meaning potential or actual malpractice claims, and that was in the court's decree in 2005. So let's say, for example, Greentree got sued directly, well, they would assume those liabilities, right, notwithstanding maybe some contractual identification claims by other entities. But here's the key point, if I may, if I go back to Judge Freeman's point, is Greentree did not buy any insurance to cover the long-tail claims against the hospital until it purchased the animal policy. So what prior insurer would Greentree report to? There was not. Well, I mean, but, you know, under Pennsylvania law, you know, we assume that you as the insurer had control over this contract. I mean, so if you're saying that that's, you know, it wasn't a well-crafted exclusion, then it seems that that would, you know, incur to Greentree's benefit, right? I mean, if... So, I mean, but it also seems that, in any event, between 2008 and 2011, there... Greentree could have had a claim filed against it. And, you know, I mean, whether they had insurance or not is not something that Admiral would necessarily know about. It didn't matter to Admiral. Well, it does matter, Judge, because, you know, the whole exclusion is really contingent upon whether they reported to a prior insurer. And in this case, clearly there's no dispute, and I think Greentree would even agree to this, that the prior Anderson action was reported to the hospital's insurer, that insurer reported to defense counsel, and they defended it until its conclusion in 2004 when it was dismissed for lack of prosecution. So there's no dispute there. But again, there was no prior insurance that Greentree purchased on the Longtail claims until 2011. So under Greentree's construction, that exclusion would never apply in any instance. What is your understanding of the... Who is the insured in the definition of a claim as used in the definition of a claim? The insured is Greentree, and there's no dispute about that. Only Greentree. Only Greentree, but they did assume the Longtail liabilities, and that's key here, and that's something that the Court understood when it gets to some of the factual findings about whether Greentree, you know, took over or acquired. Where did they assume those liabilities? Say again, Judge Porter? Where did they assume the liabilities? They assumed the liabilities in terms of the malpractice or potential malpractice claims between 1984 and 2005. What I mean is, did they assume those liabilities in the sale agreement? In the assumption agreement? Yes. Combination? So the assumption agreement goes to contractual identification claims going to certain entities, the original hospital purchasers. And by the way, I want to get to the issue later on about, well, who are the ones that made the demands for identification? They were not the original hospital purchasers, okay? So there's nothing in the record to say, oh, those are entities that Greentree had to defend and identify under those contractual obligations. That's a total red herring. But as far as the original assumption of liabilities, as far as malpractice claims, that occurred in 2005 when the sale occurred to the hospital purchasers and the charitable assets were transferred to Greentree along with the excluded liabilities that included those malpractice claims. So your position is the insured is Greentree, but Greentree stood in the shoes of the hospital because it assumed their liabilities. Correct. Exactly. And that's what this report understood, Judge Porter. Excuse me. That's what the district court understood in terms of, you know, when it made factual findings to the fact that, well, they took over or acquired. They were not the corporate successor for sure, and they didn't, you know, they didn't take over in terms of an operational sense. We all understand that. But they did stand in the shoes, essentially, of the hospital and their liabilities, what they agreed to. That's the... Oh, sorry. Sorry, how is Greentree the person against whom the Anderson claim was made? So, again, you know, this is based off of what we believe are the assumption of liabilities. Yes, Greentree did not exist in 2002. They weren't around. They weren't affiliated with the hospital. They had really nothing to do with the hospital's operations, right? But they did assume these obligations, and the coverage agreement specifically says that they are covering these long-tail claims that occurred at the hospital. So Greentree, again, cannot have its taking either, too, when it says, well, you know, the exclusion shouldn't apply here because there's no prior lawsuit filed against it in 2002. It didn't even exist. Okay, fine, cool. But then you want your cake and eat it, too, in a sense like you want coverage here for a time period when it didn't exist. And that's why I think... The whole... It didn't exist at all from that... 1984 to... I mean, that's the point of the policy, 1984 to 2005. That's correct. That's correct. And we're not saying they did have to exist. What we're saying is that Greentree agreed to assume these liabilities, these excluded liabilities, which is what the policy is covering, notwithstanding it didn't exist, right? So you can't say, well, you know, exclusion should apply because the lawsuit, the first lawsuit, wasn't filed against Greentree. We all understand that. But at the same time, you know, you know, you can't say, well, in that respect, and then you want the coverage in place even though it didn't exist. It just doesn't make any sense, and it's hard to reconcile on the coverage agreement and the exclusionary language. Mr. Chancellor, did Greentree really get what they paid for? We understand who they were and where they came in. They came in in 2008, and for whatever reason, they didn't go out and get insurance until 2011. During that three year, starting in 2008, they, in effect, as indemnitors, were acting as an insurance company for the purchasers of the hospital. That's essentially what they were. And then they went to your company, went to Admiral, and they picked up a policy to cover the claims that were presented to them under the indemnity agreement. So did they really get what they bargained for in this policy that Admiral sold them? Yeah, I mean, Your Honor, we think yes, and here's why. Again, we thought that the policy is pretty explicit in terms of what the liabilities are covering. New claims, you know, unknown claims not previously reported, right? And here you have a clearance to hear... That's not the argument you first made or your client first made in recommending denial of the claim, was it? In fact, you had made a two-part argument. One, this wasn't a medical incident, so it wasn't covered. Correct. Well, we argued that the prior acts exclusion would apply to the claim, so... At least that was not raised in front of the district court. As far as which argument, Judge? That first argument. I mean, you were... The district court relied on the exclusion. Correct. And that's what you're relying on here. That's correct. Okay. Yeah, yeah. And so, and let me get  about the contractual identification claims because I think it's an important point to make. So, the two entities that demanded identification, one company, and I know there's a lot of Chestnut Hill Hospital Company names here, but this one was called Chestnut Hill Hospital Company, LLC. They were not even a defendant in the underlying action, okay? So, they demanded identification, but they weren't even a defendant. The other one, CHHS Hospital Company, LLC, they were a defendant, but they were eventually voluntarily dismissed for, after they filed an affidavit of non-involvement. And so, they were voluntarily dismissed by all the parties. And most importantly, GreenTree didn't accept those identifications. They, you know, there's a letter in the record there, and I can point it out to you, that basically where GreenTree's counsel said, we are not accepting your demands for identification and we're just going to represent ourselves in the hospital, full stop. So, you know, all this stuff about, all these arguments about contractual identification and this and that, it's really a red herring. It's really about whether GreenTree is afforded coverage in this 2019 Anderson action and whether prior acts exclusion applies, which we think it should. So, I know I have another couple of minutes, but I'm happy to entertain any more arguments. If not, I can rest. What's the theory? Tell me what the theory is of that exclusion. I mean, why is it there's got to be some contractual fairness here to your company, why an exclusion like that would be inserted in a policy? Sure. So, it's actually a typical exclusion applied to claims made policies and it really goes down to this judge. There should be duplication of coverage here and we're not dealing with an occurrence-based policy, right, where you can have essentially multiple policies triggered during different policy periods. This is claims made. So, if a claim is made against an insurer during a policy period, that's the only policy that responds in this case. So, that's why that exclusion is very important and it really goes to the heart of the incurred but not reported coverage agreed to here. So, in this instance, we had a prior  defend Greentree. Now, as you probably know, for the record, the prior insurance company went insolvent, okay? So, had they not gone insolvent, we probably wouldn't be here today. But, again, that shouldn't come out as a consequence to Admiral here, which sold them a policy that, you know, for prior acts or liabilities. Does the record show when that prior insurance company went insolvent? I believe they started liquidation proceedings in around 2015. Happy to rest. Mr. Armstrong? Thank you, Your Honors. If I may address a few issues raised by my friend. Number one, with respect to whether or not there was insurance coverage in place prior to the inception of this policy at issue, there's nothing in the record, in the summary judgment record, about that or otherwise. And the reference in the briefing is unsupporting. Should I pause? Can you pause for a moment? Sure. Of course. I'm not sure what that is. Michael Junior? Or who it is. Maybe the other insurance  Maybe they're bringing the bag of money. I don't know. Would you mind just starting over?  sure, sure. Of course, Your Honor. I started out by talking about the idea that there was didn't have insurance before the inception of this policy. And I would encourage Your Honors to review the record on summary judgment on that basis. There are other insurances that could apply that may have duplicative coverage with an incurred but not reported policy. It's just the suggestion at this point that somehow that factored into how this came  I don't want to talk about well it wouldn't make sense if we did it this way and we did it that way. There's no way to accept the appellee's argument except to ignore the definition of claim and the policy. As far as I can tell there's no disagreement that Green Tree is the insured under the policy. The question is whether Green Tree was standing in the shoes of the hospital. And Your Honor, the successor to the hospital are the hospital purchasers to which Green Tree contractually agreed to indemnify them. And to smush it together is what we believe Admiral did in this case. If one gets sued for an auto accident and you dispute your liability you're not uncovered then under your policy. And I will note again bringing it back to the policy language is what my client is asking be enforced here. The express policy language. The definition of insured nowhere in there does it reference predecessors or successors. So even if Green Tree had stepped into the shoes rather than the hospital you know you can that's the whole nature of insurance these policy terms matter because there's more than one way to do it. And in this case they didn't do it that way. They could have said any claims brought against Chestnut Hill are excluded. They didn't say that. You know they could have said any medical incident that was a subject of a prior lawsuit excluded. They didn't say that. Well they say they argue that they did say that. Well we have we have in front of us the express terms and that's why we can always look back at that and know what the parties mean because that is what would inject such uncertainty into the insurance industry and the case laws to find that you can't rely on a defined term and a policy that's referenced four times within a definition. Insured is a term that's in bold four times in the definition of claim. To read that out now in order to allow an exclusion to apply I really I think the gravity is evident. I don't think I need to harp on it. But that's why we would ask the court you know that's what we think the error that was committed by the  Thank you.